I wonder if the attorneys would step up. Is it Ms. Arizo? Yes. Is that how you pronounce it? Arizo. Arizo. On behalf of the Attorney Michael Edgleston. Okay. And you're Mr. Toppanetti. You've been here before. How are you, Mr. Toppanetti? We still have the scars to show. From last time. We battered you around pretty good last week. That doesn't necessarily mean you're going to get battered this week, but it's likely. Fifteen minutes per side. And you can save up any portion you wish for. Yes, I'd like to reserve a couple minutes. You may. May it please the Court. I'd like to focus portions of arguments more than two, but would be happy to take questions on any of the arguments. At trial, the State decided to proceed on three counts of felony murder and nulling the intentional and nulling counts prior to trial. Because of this, they needed to prove Michael Edgleston committed murder during the commission of an attempt armed robbery, as that was the underlying felony. However, the State's evidence was insufficient to prove this underlying charge. Perhaps because the State realized that they could not sufficiently prove that an attempt armed robbery even took place, they made up eyewitnesses that did not exist. There was no charge of robbery or attempt robbery involved. The sole charge was the felony murder. Right, with the underlying felony. Perhaps because they were unable to prove the attempt armed robbery, they repeatedly and improperly told the jury that there were not only witnesses that could identify the defendant, which was not true, but also that they were too afraid to come to court to testify because of some sort of fear of retribution that was also not in evidence. Now, under the law of purpose electi, the State needs to show that the crime was committed as charged and that it was committed by the defendant. Here, aside from one of the defendant's alleged statements to the detective, there was no proof that an attempt armed robbery even took place. There was no witnesses at trial. Well, why would they have to prove the attempt at armed robbery, even under people versus sergeant? Since they are not bringing independent charges, it's only one charge. The charge is murder. Everything else pertains to the theory of culpability, whether it's intentional or whether it's a felony. Once they corroborate the murder, why haven't they satisfied their duty? Well, it's our position that the offense isn't just the murder. But it is. It's the only offense brought. The felony murder is the theory. Well, but as charged, it's a murder during the commission of the attempt on robbery. It would be different if they were also charging them with the armed robbery. Then you would have, I think, a stronger basis for your contentions, particularly under Davis. Perhaps there would be a stronger contention there. But it is our position that, despite the fact that it wasn't charged, you need to corroborate the confession. That's the issue of the Purpose Select Act. You have to corroborate the crime. And you don't have to corroborate every element of the crime. The cases are very explicit about that. At best, the armed robbery would be one of the elements of the crime. But you've corroborated the major element, which is that the guy is dead as a result of criminal action. But it's the goal, the policy reason for the law is to ensure that the confession is not given involuntarily. That's the reason behind this law. So if it only corroborates the part that we know already, that there are three people that have died, that does nothing to corroborate the statements given, allegedly, by the defendant in this case. So what? That's the toughest question of the day, isn't it? I'm sorry. I mean, you're trying to suggest that unless they were able to establish with independent evidence of armed robbery, the confession, which is really what you're talking about, corroboration of the confession, is suspect. Right. Maybe I'm a little dense, but this, and I've been accused of it, this is a very narrow wire you're walking. I mean, you're going to, how would, what, we would have to write an opinion that buys into your rationale. I suppose you're asking us to follow Sargent rather than Salinas. Right. Which means we have to walk off the reservation from our district and go along with the second district. That's a problem to begin with, but it's not necessarily a difficult problem, I suppose, that we should choose to follow the second district rather than the first. Since we're not a trial court. Since we're not a trial court. But it does raise some concerns that I have. First of all, I think I can distinguish the two cases, but that's beside the point. I really am having trouble finding out where in the law you decided that it had to be specific evidence of a armed robbery. Well, I mean, the cases that I cited obviously are not specifically on point as this issue has not been specifically dealt with. The cases that I cited to Bell, for example, in that case they didn't just look to whether the murder was corroborated. They looked also to whether the attempt on robbery was also corroborated in that case. So you can infer that that court is determining. On the other hand, in Montez they didn't, did they? No, in Montez they just looked to... That's almost a case in point. What we used to call a red cow case, meaning that if your case was about a red cow, the case you cited also involved a red cow. I believe the Montez court actually made the point specifically saying, you know, we aren't saying that we agree or disagree with this issue of whether each offense must be specifically corroborated by independent evidence. I think they actually made that point that we're not actually... You know, they needed to point that out that they're aware of this issue, but they actually made the point of saying we're not going to go either way on that. And yes, that case was factually similar to this case. However, I would argue that their ultimate conclusion in that case was that it was too speculative to assume that just because it's the middle of the night and there was a gunshot and the shooter fled, that somehow would tend to establish an attempt on robbery. I mean, that's just not enough to prove the attempt on robbery took place. Well, you don't have to prove. You have to corroborate. Right. Right. It's not right. It's not proof beyond a reasonable doubt. Right. You seem to suggest that it is beyond a reasonable doubt in your brief, though. Are you backing off from that? That you have to prove... Maybe it's the way you phrased it. Perhaps. Perhaps. Could be interpreted as meaning you had to prove beyond a reasonable doubt the entire elements of the corpus delicti. We argued that because the corpus delicti wasn't met, that the evidence wasn't sufficient. Is that what you mean? Were there other questions on this issue, or should I move on to my second issue? Okay. As I stated earlier, during the closing arguments, the prosecution here made up, essentially made up witnesses and argued to the jury repeatedly that you can't blame anyone for not coming to court to testify against the defendant. You shouldn't reward the defendant because no one came forward. Well, let me ask you. Assuming, and I'm not very far away from making that assumption, that they made up witnesses, or that they talked about witnesses who didn't appear because they were intimidated without any evidence being presented, where's the harm? Where's the prejudice? In the face of his confession. Which is now, as far as, if we assume that there's adequate corroboration, which your second argument, it's an alternative argument. So assume that there's adequate corroboration. You have a confessed murder. What could be more influential than the confession? Well, I mean, in this case, we have the confession, alleged confession, to the detective and then again to a state judge. Neither of which are in writing. Neither of which were signed by the defendant. No videotape, no tape recording. So this is not something that you can assume that the jury is automatically going to agree with. They're instructed on how to consider the confession and things to take into account and that's something they're going to do. We can't automatically assume that they're going to believe the confession on its face. And certainly, during the deliberations, they were debating about the statements that they asked for. And I believe the state attorney's notes during their deliberations. Further, I mean, plus the statement, that's basically all there is in this case. So it's hard to say that there's no harm when the prosecution is making these statements repeatedly to the jury when there's no physical evidence, no eyewitnesses, nothing tying him whatsoever to the crime except for the statement. So for that reason, it's extremely harmful. And for those reasons. Are there any other questions? Okay. So we would just ask that his conviction be reversed or any alternative remanded for a new trial. Thank you. Thank you, counsel. Thank you, Ms. Aviza. Mr. Taffanetti. Your Honor, as to the issue of the corpus delecti for felony murder, the corpus delecti for felony murder is the same for any other murder, first-degree murder, because there's only one crime of first-degree murder. There are three theories of prosecution. When we show a corpus delecti or satisfy the corpus delecti rule for any of them, we do not need to satisfy the element of the mental state or any specific element. We need to show only that there was a homicidal death. That's the corpus delecti for first-degree murder. In this case, you've got three people dying of gunshot wounds. That satisfies the corpus delecti rule. It satisfies the whole purpose of the corpus delecti rule. How about the second issue, counsel? The second issue. What they complain about is the language. Do you reward him because no person has the courage to come forward today to this courtroom and pick him out as the man who they saw shoot and kill the Austin brothers? There was an objection. The objection was sustained. The reason for the objection, that this presumed that there were people, was stated for the judge. But there was persistence in asking that. I'm sorry? The prosecutor didn't stop with the first objection. He really pushed the envelope in this case, didn't he? I don't think so. I don't think so at all. First of all, you have all of the objections that were made sustained, and the jury was instructive. I think he made three attempts at it. And isn't there a case now that says that the persistence alone, even if the error is not by itself prejudicial, warrants reversal? The prosecutor never argued that there were, in fact, witnesses who could come forward but didn't because they were afraid. The prosecutor was responding to an argument made by the defendant. Where are these witnesses? Where are the 20 or 30 or 50 witnesses? And the prosecution, based on the evidence, showed the evidence that there were a number of people present, that none of them came forward, that they were uncooperative and even hostile to the police. But isn't the immediate inference to be drawn from that, that they didn't come forward because it never happened, as opposed to being a basis for a valid inference that they didn't come forward because they were intimidated? If the case hung on that alone, wouldn't that certainly be error in terms of inferring intimidation simply because it's a high crime area and I don't know, was there gang evidence here? There's gang evidence, yes. No, there's nothing that ties any, that there's any specific threat or even a nonspecific threat. There's nothing that ties any kind of threat of gang intimidation. There is merely the fact that there's plenty of evidence that the people, all these people, whoever was present, didn't come forward, did not cooperate with the police. And in fact, even one of the victims as he lay dying would not cooperate with the police. That's a fact of life you have to deal with in this type of environment. Do you want us to bank our opinion on that? I think you could bank your opinion on that. You think you'll avoid a PLA if we base our opinion on that? I think you could bank your opinion on the fact that the argument that was made is subject to more than one interpretation, that you don't have to presume the most harmful interpretation, that the objection was sustained, that the jury was instructed, that the objection was specific as to this point. And I do not agree that the state's attorneys, in fact, came back and pushed the envelope on this. What the state's attorneys were doing was arguing the integrity of the investigation, that in a situation where the prosecution is accused, the police is accused, the state's attorneys are accused of fabricating evidence of malfeasance, that they have a right to demonstrate the integrity of the investigation. The state's attorney, the police officer, they were essentially accused of perjuring themselves in a conspiracy to frame an honest man. How do we know that this is not true? The police conducted the proper investigation by talking to witnesses, by canvassing, by finding people who knew something and going from one person to the next. And defendant made no objection either to the testimony or to the argument on this point. And this was just part of that same point. All right? And this, I don't, you know, you raise an interesting question about invited error. I personally wrote an opinion that error doesn't invite error. It only applies as to relevance. But I think the case has gone beyond that. But does invited error permit inferences to be made that are not cognizant? I don't think you could say that there is any actual inference in this case, deliberately argued by the people, that there are witnesses who could come forward. Maybe it's a possibility. We don't know because they didn't come forward. But to say that there are and that they didn't because they were afraid of this defendant or afraid of his gang, that's just not in the argument. That's not in the argument. You don't have to read him to the argument. Okay? What is in the argument? You've lost me. I'm sorry? What is in the argument? I innocently ask. The question posed to the jury, the rhetorical question by the prosecutor in this case, do you reward him because no person has the courage to come forward today to this courtroom and pick him out as the man who they saw shot and killed the Austin brothers? What's the jury supposed to infer from that other than the fact that there were people who didn't have the courage to come forward? But there are eyewitnesses lurking in the back. I don't think that's the only inference possible. And insofar as that is a possibility. Can we infer that a different judge other than Judge Higgins Grant might have handed the prosecutor his head on the platter after that question was posed? I would not care to speculate as to what any other judge would do. Okay. That takes us beyond the record. Right. Is it because you have doubts about the head or the platter? The objection was sustained. Right. I mean, it was sustained, and that's all. How about the prejudice in that type of statement? I'm sorry? How about the prejudice in hearing that type of statement? The prejudice is presumed to be cured. I mean, Your Honor, if Your Honor is saying this is not a perfect trial, you're right. It's not a perfect trial. Not perfect arguments. There are no such thing. The question is, is it a fundamentally fair trial? Is it a trial where, you know, can we take it? Well, I'm going to toss you a softball, Mr. Taffanetti. I would welcome it. Not because you deserve it, but because I want your opponent to answer it. Supposing the jury, the prosecutor said, there are all sorts of reasons why witnesses won't testify. We don't have to speculate why, you know. This is a high crime area, et cetera, et cetera. If he took that approach to answering the question, would he possibly have had a better shot at having valid justification for his answer? Actually, I don't necessarily think that would get him out of any hot water. So he could have said, we don't have to speculate why witnesses don't appear. There are all kinds of reasons, ranging from A to Z. And he could have listed intimidation as a possibility. The defendant argued that there were 20 or 30 or 50 witnesses. Where are they? Now, we do have a right to make a response. Well, I was wondering if we were going to get around to that, that this was clearly in response to invited error by a defense counsel by even raising that inference. Yes. Why didn't he open the door? I would say he did. Now, we don't have to not respond to that. Obviously, that does not allow us to go into areas that would be prejudicial, unfairly prejudicial. But we have a right to respond to his argument. That's what argument is all about. But he can't respond to the argument by giving testimony. Well, by that time, it's too late. The prosecutor is testifying that there are witnesses who saw it but are afraid to come forward with it. You know, there's even a hearsay aspect to it. I think Your Honor is reading way too much into that. I think this was a permissible response based upon the evidence. I wouldn't push it too hard if I were you, Mr. Detective. Well, it is frozen lunchtime, perhaps I should close up. If there are no further questions, then I would merely ask that the conviction be affirmed. Thank you, Mr. Topolini. There's a reasonable final word here. What about that? What if the state's attorney said that defense is asking where are all the witnesses? There are all kinds of reasons why witnesses won't appear. It could be because they don't like to go to court. It could be because they're afraid. It could be because of this or because of that. How would your reaction be to that? Well, certainly that's a much more speculative argument that the prosecutor could have made. But in this case, contrary to what the state's arguing, I do believe this was a very pervasive argument throughout the entire rebuttal closing argument. And it was not just... You can't just say that it was just in response to a defense argument. It went way beyond that. And it wasn't just that they said there were witnesses that didn't come forward. As you alluded to a moment ago, they actually referenced the fact that the witnesses spoke to the detective and then sooner or later an investigative alert was issued. And then this improperly argued to the jury that not only were there witnesses, but they had enough good information that that resulted in a warrant being issued. This goes beyond your speculation about explaining where the witnesses might be. Of course, the judge sustained the objections here. So that goes a long distance towards mitigating any prejudicial impact. Well, I would argue that, yes, they were sustained. And then it becomes a disciplinary matter more than a prejudicial matter. Well, I think that the fact that not only was it sustained once, but then the prosecutor kept repeating the same argument gets into the jury's head. Yes, they're hearing that it's sustained,  and you have to imagine that it's going to get into their mind about whether or not this is, in fact, true. Oh, there's one there. Thank you. Counsels, thank you both. The case will be taken under advisement.